**WILEY REIN LLP**
 Duane C. Pozza (Cal. Bar No. 225933)
   dpozza@wiley.law
Stephen J. Obermeier (*pro hac vice* forthcoming)
   sobermeier@wiley.law
2050 M Street NW
Washington, DC 20036
Telephone: (202) 719-7000
Fax: (202) 719-7049

*Counsel for Movants Stonington Strategies LLC and Nicolas D. Muzin*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| In Re: Motion to Compel Compliance with Subpoena Directed to Nonparty Delon Cheng | Case No. _____ |
| Underlying Matter | [DISCOVERY MATTER] |
| BROIDY CAPITAL MANAGEMENT, LLC and ELLIOTT BROIDY, | **MOVANTS' MOTION TO COMPEL SUBPOENA RESPONSES AND MEMORANDUM IN SUPPORT** |
| Plaintiffs, | |
| v. | Judge:   [TBD] |
| NICOLAS D. MUZIN, JOSEPH ALLAHAM, GREGORY HOWARD, and STONINGTON STRATEGIES LLC, | Date:    [TBD] |
| | Time:    [TBD] |
| Defendants. | Place:   [TBD] |

## **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................4

LEGAL STANDARD ...........................................................................................5

ARGUMENT .........................................................................................................6

    I.     Respondent Waived All Objections to Stonington's Subpoena. ..........7

    II.    Respondent Is in Violation of His Obligation to Respond to the Subpoena. ..............................................................................................8

    III.   Respondent's Failure to Respond Harms Stonington. .........................9

CONCLUSION ....................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aguilar v. City of Azusa*,
   No. 14-CV-9183, 2016 WL 11755112 (C.D. Cal. Jan. 5, 2016)......................5, 8

*Alexander v. F.B.I.*,
   194 F.R.D. 316 (D.D.C. 2000) ............................................................................6

*Alloure, Inc. v. FA Coop., Inc.*,
   No. 08-CV-0614, 2009 WL 10675174 (C.D. Cal. Sept. 25, 2009)......................5

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. 3:07-CV-05944, 2015 WL 12952688 (N.D. Cal. Jan. 16, 2015) ...............10

*Comm. on Judiciary v. McGahn*,
   415 F. Supp. 3d 148 (D.D.C. 2019).....................................................................8

*Delis v. Sionix Corp.*,
   No. 13-CV-1547, 2015 WL 12733439 (C.D. Cal. Mar. 12, 2015) .....................8

*Interior Elec. Inc. Nev. v. Beverly*,
   No. 5:20-MC-24, 2020 WL 8457486 (C.D. Cal. Dec. 7, 2020).........................7

*Monster Energy Co. v. Vital Pharm., Inc.*,
   No. 5:18-CV-01882, 2019 WL 8112506 (C.D. Cal. Oct. 16, 2019) ...................6

*Morin v. Cnty. of Riverside*,
   No. 14-CV-141, 2014 WL 12597117 (C.D. Cal. Oct. 27, 2014) ........................8

*Omnicare, Inc. v. R & W Delivery, LLC*,
   No. 2:21-MC-00075, 2021 WL 4776695 (C.D. Cal. Mar. 15, 2021) ..............5, 7

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978)............................................................................................6

*Pietrangelo v. Refresh Club, Inc.*,
   No. 18-CV-1943, 2021 WL 1209300 (D.D.C. Mar. 31, 2021).........................10

*Pietrangelo v. Refresh Club, Inc.*,
   No. 18-CV-1943, 2021 WL 2156504 (D.D.C. May 26, 2021) ..........................6

Movants' Motion to Compel Subpoena Responses and Memorandum in Support
- ii -

*Poturich v. Allstate Ins. Co.*,
  No. 15-CV-0081, 2015 WL 12766048 (C.D. Cal. Aug. 11, 2015) ..................5, 7

*Pure Aqua, Inc. v. Envitec Corp.*,
  No. 12-CV-01936, 2013 WL 12114610 (C.D. Cal. Oct. 25, 2013) .....................7

*Richmark Corp. v. Timber Falling Consultants*,
  959 F.2d 1468 (9th Cir. 1992) ........................................................................7

*Roberts v. Cnty. of Riverside*,
  No. 5:19-CV-01877, 2021 WL 5993528 (C.D. Cal. Oct. 7, 2021) ..................5, 6

*In re Subpoena to VaughnPerling*,
  No. 2:19-MC-00083, 2019 WL 8012372 (C.D. Cal. Dec. 2, 2019).................4, 5

**Statutes and Rules**

Foreign Agents Registration Act of 1938,
  22 U.S.C. § 611 *et seq.* ...............................................................................12

Fed. R. Civ. P. 26 .................................................................................2, 3, 5, 6

Fed. R. Civ. P. 45 .......................................................................................*passim*

Fed. R. Civ. P. 45, Advisory Committee's Notes to 1991 Amendment ..................8

**Other Authorities**

Desmond Butler & Tom LoBianco, *The princes, the president
  and the fortune seekers*, AP News (May 21, 2018),
  https://apnews.com/article/north-america-donald-trump-ap-top-
  news-qatar-international-news-a3521859cf8d4c199cb9a8567abd2b71 ........2, 11

Desmond Butler et al., *Mueller probe witness secretly backed UAE
  agenda in Congress*, AP News (Mar. 26, 2018),
  https://apnews.com/article/north-america-donald-trump-ap-
  top-news-qatar-politics-b4946f7bf1fe4328b0c81506434aa082..........................11

35A C.J.S. Federal Civil Procedure § 560 .............................................................8

Dan Friedman, *Qatari Lobbyists Received Millions Through Shadow Firm*, Mother Jones (Jan. 8, 2019), https://www.motherjones.com/politics/2019/01/qatari-lobbyists-received-millions-through-shadow-firm/ ..........................................................12

Justin Glawe, *Elliot Broidy's Company Got Its Biggest U.S. Government Job Ever While He Pitched Trump Administration*, Daily Beast (May 24, 2018), https://www.thedailybeast.com/elliott-broidys-company-got-its-biggest-us-government-job-everwhile-he-pitched-trump-administration ........................................................11

Ryan Grim & Alex Emmons, *Trump Fundraiser Offered Russian Gas Company Plan to Get Sanctions Lifted for $26 Million*, The Intercept (Apr. 20, 2018), https://theintercept.com/2018/04/20/elliott-broidy-trump-russia-sanctions/ ............................................11

Bradley Hope et al., *Trump Ally Was in Talks to Earn Millions in Effort to End 1MDB Probe in U.S.*, Wall St. J. (Mar. 1, 2018), https://www.wsj.com/articles/trump-ally-was-in-talks-to-earn-millions-in-effort-to-end-1mdbprobe-in-u-s-1519919321 .................................11

Suzanne Kianpour, *Emails show UAE-linked effort against Tillerson*, BBC (Mar. 5, 2018), https://www.bbc.com/news/world-us-canada-43281519 ................................................................................11

David D. Kirkpatrick & Mark Mazzetti, *How 2 Gulf Monarchies Sought to Influence the White House*, N.Y. Times (Mar. 21, 2018), https://www.nytimes.com/2018/03/21/us/politics/george-nader-elliott-broidy-uae-saudi-arabia-white-house-influence.html ..............................11

Andy Kroll, *How Trump's Swamp Works Now*, Rolling Stone (Feb. 12, 2019), https://www.rollingstone.com/politics/politics-features/elliott-broidy-donald-trump-swamp-793159/ .............11

Adam Pasick, *A timeline of all the foreign payments to Donald Trump's moneymen, Elliott Broidy and Michael Cohen*, Quartz (May 25, 2018), https://qz.com/1287027/a-timeline-of-donald-trump-associates-elliott-broidy-and-michaelcohens-payments-from-foreign-countries/ ................11

Eileen Sullivan, *4 Takeaways From a Close Look at Elliott Broidy*,
   N.Y. Times (Aug. 13, 2019),
   https://www.nytimes.com/2019/08/13/us/politics/elliott-
   broidy-donald-trump.html..................................................................................2

U.S. Dep't of Justice, *Recent FARA Cases* (Dec. 3, 2021),
   https://www.justice.gov/nsd-fara/recent-cases ....................................................12

Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B)(i), Movants Nicolas D. Muzin and Stonington Strategies, LLC (collectively, "Stonington" or "Movants"), respectfully request that this Court compel Delon Cheng ("Cheng" or "Respondent") to comply with a subpoena for documents issued to him, to hold Respondent in contempt, and/or order Respondent to show cause as to why he should not be held in contempt for failure to comply with the subpoena. Stonington personally served Respondent with a subpoena nearly two months ago. Respondent, however, has failed to object, and he has flouted his obligation to respond to the subpoena.

## INTRODUCTION

Movants are named defendants in an action pending in the U.S. District Court for the District of Columbia. *See* First Am. Compl. ("FAC"), *Broidy Capital Management, LLC et al. v. Nicholas Muzin et al.*, No. 1:19-cv-00150, ECF No. 18-2 (D.D.C. Apr. 2, 2019) (the "Underlying Action"). A copy of the underlying complaint is attached as Exhibit 1. The Underlying Action represents the fifth attempt by Elliott Broidy (with Broidy Capital Management, Plaintiffs in the Underlying Action, "Broidy") to pursue claims against those he alleges were involved in a widespread conspiracy, supposedly orchestrated by the State of Qatar ("Qatar"), to hack his computer and disseminate his emails to journalists.[1] Broidy's FAC alleges that the resulting media coverage of his leaked emails falsely

---

[1] Two other suits that Broidy has filed to date have been dismissed. *See Broidy Cap. Mgmt., LLC v. Benomar*, No. 18-CV-06615, ECF No. 56 (S.D.N.Y. Dec. 21, 2018); *Broidy Cap. Mgmt., LLC v. Qatar*, No. 18-CV-2421, 2018 WL 6074570, at *11 (C.D. Cal. Aug. 8, 2018), *aff'd*, 982 F.3d 582 (9th Cir. 2020); *Broidy Cap. Mgmt., LLC v. Qatar*, No. 18-CV-2421, 2018 WL 9943551, at *9 (C.D. Cal. Aug. 22, 2018); *Broidy Cap. Mgmt., LLC v. Qatar*, No. 18-CV-2421, 2018 WL 9943552, at *11 (C.D. Cal. Aug. 16, 2018). The court in a third suit also granted a motion to dismiss, *Broidy v. Glob. Risk Advisors LLC*, No. 1:19-CV-11861, 2021 WL 1225949, at *10 (S.D.N.Y. Mar. 31, 2021), but recently allowed amendment based on an entirely new legal theory, *id.* ECF No. 114 (S.D.N.Y. Feb. 28, 2022). Broidy's counterclaims, filed in a fourth suit, were also recently dismissed. *See Mosafer Inc. v. Broidy*, No. 21-CV-06320, ECF No. 134, (C.D. Cal. Feb. 4, 2022).

disparaged his character, exposed his supposed trade secrets, and ultimately damaged both his public standing and his business relationships. Broidy claims that he was targeted because of his outspoken, and supposedly civic-minded, opposition to Qatar.

According to the FAC, the alleged hacking operation occurred from December 2017 through early 2018. The relevant events of this lawsuit, however, began well before then, in at least 2016 and early 2017, when many of the leaked emails were sent and the illegal activity discussed in them occurred.

Broidy's leaked emails—and the many articles written about them—provide a window into a vast operation of undisclosed foreign lobbying, corruption, and other illegal activity. In pertinent part, Broidy supported a large-scale public relations effort targeting Qatar and those working to improve the relationship between the governments of the United States and Qatar, on behalf of countries like the United Arab Emirates ("UAE") and Saudi Arabia. In doing so, Broidy relied on members of the media, nonprofits, public relations firms, and think tanks to spread the anti-Qatar message.[2]

Respondent is the president of Argyle Corporation, a managed IT and technology consulting company that Broidy employed in relation to the alleged hack. In a prior suit brought by Broidy in this district, alleging similar hacking claims against Stonington, Broidy identified Respondent in his Rule 26(a)(1) Disclosures as a person with information concerning (1) the alleged hack, including without limitation Broidy's computer systems and security, "the ***identity of those who planned and participated*** in the dissemination" of allegedly stolen materials,

---

[2] *See, e.g.*, Eileen Sullivan, *4 Takeaways From a Close Look at Elliott Broidy*, N.Y. Times (Aug. 13, 2019), https://www.nytimes.com/2019/08/13/us/politics/elliott-broidy-donald-trump.html; Desmond Butler & Tom LoBianco, *The princes, the president and the fortune seekers*, AP News (May 21, 2018), https://apnews.com/article/north-america-donald-trump-ap-top-news-qatar-international-news-a3521859cf8d4c199cb9a8567abd2b71.

payments allegedly made to individuals to hack Broidy's systems, and the materials allegedly stolen from Broidy; and (2) damages caused by the alleged hack and dissemination of materials allegedly stolen from Broidy.  Ex. 2, Broidy California Initial Disclosures.[3]  That is, Broidy himself identified Respondent as someone with knowledge of issues that go to the heart of Broidy's claims and Stonington's defenses.

Pursuant to Federal Rule of Civil Procedure 45, Stonington served Respondent with document requests seeking information about the alleged hack, any investigation of the alleged hack, the alleged damages from that alleged hack, and the unlawful efforts to shape U.S. policy in favor of foreign powers through contact with the media, think tanks, public relations firms, and/or government officials that the hacked documents reveal.  Information resulting from these requests will support defenses against Broidy's claims, undermine Broidy's factual allegations and credibility, and challenge his asserted entitlement to damages, including his alleged loss of business relationships and opportunities that he allegedly suffered as a result of Defendants'[4] conduct.  That is to say, all of the requests are permissible and seek relevant information.  *See* Fed. R. Civ. P. 26(b).

After delaying acceptance of personal service for more than three weeks, Respondent has failed to provide any response to Stonington's requests.  Despite being served with the subpoena nearly two months ago, Respondent has not provided a single objection.  Indeed, Respondent has not responded to the subpoena at all.  As a result, Respondent is in violation of the subpoena and has waived any objections to the subpoena.  This Court should grant Stonington's motion to compel

---

[3] Unless otherwise noted, all emphasis in the brief has been added, and all internal citations, quotations, and alterations have been omitted.

[4] Stonington, Gregory Howard, and Joseph Allaham (together, "Defendants").

in full, find Respondent in contempt, and/or order Respondent to show cause as to why he should not be held in contempt.

## BACKGROUND

On January 14, 2022, Stonington issued a subpoena directed to Respondent, with a compliance deadline of February 13, 2022. Ex. 3, Cheng Subpoena. After attempting service sixteen separate times over a period of three weeks, Respondent was personally served with the subpoena on February 4, 2022, at his residence.[5] Ex. 4, Cheng Affidavit of Service.

Under the Federal Rules, written objections and responses to the subpoena were therefore due by at least February 14, 2022. *See* Fed. R. Civ. P. 45(d)(2)(B) (stating objections are due the earlier of the compliance deadline or 14 days after subpoena service); *id.* 6(a)(1)(C) (stating that if the last day falls on a weekend or holiday, "the period continues to run" until the next business day). But Respondent ignored the compliance deadline, failing to serve any objections to the subpoena or respond by the February 14 deadline.[6]

To date, more than six weeks after the subpoena's due date and objection deadline, Respondent has failed to contact Stonington regarding the subpoena or produce a single document. He has thus entirely failed to comply with his

---

[5] Personal service on a subpoena respondent is more than sufficient to effect service under Rule 45. *See, e.g.*, *In re Subpoena to VaughnPerling*, No. 2:19-MC-00083, 2019 WL 8012372, at *3 (C.D. Cal. Dec. 2, 2019) (noting a growing "trend among courts to allow substitute service of a Rule 45 subpoena, such as mail delivery, so long as the method of service is reasonably calculated to provide timely, fair notice and an opportunity to object or file a motion to quash.").

[6] On February 14 (the day following the subpoena's facial due date), Broidy filed a motion for protective order in the Underlying Action, which seeks to limit the scope of Defendants' third-party subpoenas. *See* ECF No. 118, Underlying Action (Feb. 14, 2022). Broidy does not seek to quash Stonington's subpoena to Respondent in the Underlying Action, and Movants are not aware of any motion to do so in this Court as the "place of compliance" required by Rule 45(c). Accordingly, such motion should not affect the Court's ruling here, as Respondent has waived any objections to the subpoena and he has not made any good faith effort to respond to the subpoena.

obligations under Rule 45, and he has offered no good faith reason for his noncompliance.[7] This Court should compel Respondent to fully and immediately comply with the subpoena, find Respondent in contempt, and/or order him to show cause as to why he should not be held in contempt for failure to comply in the first instance.[8]

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 45, a party may serve a subpoena on a nonparty compelling the production of documents. Fed. R. Civ. P. 45(a)(1)(A)(iii). "The same broad scope of discovery set out in Rule 26 applies to the discovery that may be sought pursuant to Rule 45." *Roberts v. Cnty. of Riverside*, No. 5:19-CV-01877, 2021 WL 5993528, at *6 (C.D. Cal. Oct. 7, 2021).

---

[7] Respondent is a nonparty. As far as Stonington is aware, he is not represented by counsel. For these reasons, Stonington is "not required to comply with the requirement of Local Rule 37 regarding conferring in good faith prior to bringing discovery motions." *Alloure, Inc. v. FA Coop., Inc.*, No. 08-CV-0614, 2009 WL 10675174, at *1 (C.D. Cal. Sept. 25, 2009); *see Aguilar v. City of Azusa*, No. 14-CV-9183, 2016 WL 11755112, at *1 (C.D. Cal. Jan. 5, 2016) ("[Local] Rule 37 is inapplicable."). In any event, Respondent's failure to communicate with counsel after his being personally served with a subpoena indicates that efforts to confer would be futile. Courts in this district have ordered similar relief in favor of a movant seeking to enforce a subpoena against unrepresented non-party subpoena respondents. *See, e.g.*, *Omnicare, Inc. v. R & W Delivery, LLC*, No. 2:21-MC-00075, 2021 WL 4776695, at *2 (C.D. Cal. Mar. 15, 2021) (ordering production of responsive documents); *In re Subpoena to VaughnPerling*, 2019 WL 8012372, at *5 (ordering response to subpoena); *Poturich v. Allstate Ins. Co.*, No. 15-CV-0081, 2015 WL 12766048, at *3 (C.D. Cal. Aug. 11, 2015) (ordering production of "all responsive documents without objections").

[8] Stonington has been forced to undertake subpoena enforcement litigation across the country. As a result, Stonington also filed a joint stipulation to transfer a motion to compel subpoena responses from two separate non-parties in this jurisdiction on March 9, 2022. *In re: Motion to Compel Compliance with Subpoena Directed to Non-Parties Joel Mowbray and Robin Rosenzweig*, Case No. 2:22-MC-48. The parties sought transfer pursuant to Rule 45(f) based on agreement between Stonington and counsel for non-parties Mowbray and Rosenzweig. *See id.*, ECF No. 1-1 (Mar. 9, 2022). The request was granted on March 11, 2022, and the Court ordered the matter be transferred to the District Court for the District of Columbia for resolution by the assigned judge in the Underlying Action. *Id.*, ECF No. 11 (Mar. 11, 2022).

Under Rule 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Relevancy should be construed liberally and with common sense and discovery should be allowed unless the information sought has no conceivable bearing on the case." *Monster Energy Co. v. Vital Pharm., Inc.*, No. 5:18-CV-01882, 2019 WL 8112506, at *2 (C.D. Cal. Oct. 16, 2019); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (defining a "relevant matter" as any matter that "bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case"); *Roberts*, 2021 WL 5993528, at *5 (same); *Pietrangelo v. Refresh Club, Inc.*, No. 18-CV-1943, 2021 WL 2156504, at *5 (D.D.C. May 26, 2021) (Friedrich, J.) ("When it comes to discovery, relevance is construed broadly."); *Alexander v. F.B.I.*, 194 F.R.D. 316, 326 (D.D.C. 2000) ("Discovery is not to be denied because it relates to a claim or defense that is being challenged as insufficient.").

## ARGUMENT

Stonington's subpoena seeks non-privileged documents that are directly probative of specific allegations in the FAC, elements of Broidy's claims and alleged damages—including the source, investigation, and extent of the alleged hack—Broidy's credibility and motives for bringing this case, and Stonington's defenses. Indeed, Broidy himself identified Cheng previously as having information directly relevant to his claims. *See* Ex. 2. Rather than serving timely written objections or even bothering to comply with the subpoena as contemplated by the Federal Rules of Civil Procedure, Respondent has ducked his obligations entirely.

This Court should thus order Respondent to promptly produce all responsive documents. Respondent has waived any potential objections. Respondent has further violated his duty to comply with the subpoena by failing to respond. And

his failure to respond harms Stonington's ability to test Broidy's allegations and prepare its defenses.

I. **RESPONDENT WAIVED ALL OBJECTIONS TO STONINGTON'S SUBPOENA.**

Under Rule 45, a nonparty may object to a subpoena. Objections, however, "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served." Fed. R. Civ. P. 45(d)(2)(B). "It is well established that a failure to object to discovery requests within the time required constitutes a waiver of any objection." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992); *see also Omnicare*, 2021 WL 4776695, at *2 ("A nonparty's failure timely to make objections to a Rule 45 subpoena duces tecum generally requires the court to find that any objections have been waived absent unusual circumstances and a showing of good cause."); *Interior Elec. Inc. Nev. v. Beverly*, No. 5:20-MC-24, 2020 WL 8457486, at *2 (C.D. Cal. Dec. 7, 2020) ("A nonparty's failure to timely make objections to a Rule 45 subpoena generally requires the court to find that any objections have been waived."); *Poturich*, 2015 WL 12766048, at *2 ("Failure to serve timely objections waives all grounds for objection."); *Pure Aqua, Inc. v. Envitec Corp.*, No. 12-CV-01936, 2013 WL 12114610, at *1 (C.D. Cal. Oct. 25, 2013) ("[A]ll objections to subpoenas are waived unless the objections are served in the time and manner required by Rule 45. . . .").

Here, Respondent has failed to serve any objections at all. The time specified for Respondent's compliance with Stonington's subpoena was February 13, 2022, and, based on the February 4 service date, Respondent's objections were due by the compliance deadline. *See* Rules 45(d)(2)(B), 6(a)(1)(C); Exs. 3 & 4. Respondent's objections were thus due on February 14, and Respondent failed to serve objections by that date. More than six weeks later, Respondent still has not attempted to object or otherwise even acknowledge the need to comply with a subpoena seeking

relevant information. Thus, Respondent has waived any objection to the subpoena, and for that reason alone, the Court should compel Respondent to comply with the subpoena in full.

## II. RESPONDENT IS IN VIOLATION OF HIS OBLIGATION TO RESPOND TO THE SUBPOENA.

"A subpoena is a court order." *Delis v. Sionix Corp.*, No. 13-CV-1547, 2015 WL 12733439, at *2 (C.D. Cal. Mar. 12, 2015). As the Advisory Committee's commentary makes clear, Rule 45 allows "attorneys in distant districts to serve as officers authorized to issue commands in the name of the court," and "defiance of a subpoena is . . . an act in defiance of a court order." Fed. R. Civ. P. 45, Advisory Committee's Notes to 1991 Amendment. This is because "[i]t is the duty of a person on whom a duly issued subpoena has been served to obey it." 35A C.J.S. Federal Civil Procedure § 560; *Comm. on Judiciary v. McGahn*, 415 F. Supp. 3d 148, 168 (D.D.C. 2019) ("[A] valid subpoena ordinarily gives rise to a legally enforceable duty to perform in the requested manner."), *vacated on other grounds*, 951 F.3d 510 (D.C. Cir. 2020).

Violation of a subpoena thus "exposes the defiant witness to contempt sanctions." Fed. R. Civ. P. 45, Advisory Committee's Notes to 1991 Amendment; *see* Fed. R. Civ. P. 45(g); *Morin v. Cnty. of Riverside*, No. 14-CV-141, 2014 WL 12597117, at *1 (C.D. Cal. Oct. 27, 2014) ("Upon [a nonparty's] failure to obey the subpoena in the first instance, plaintiffs could have moved the court to hold him in contempt."). Indeed, some courts have found that "the only sanction available when a nonparty witness fails without adequate excuse to obey a subpoena is a contempt citation." *Aguilar*, 2016 WL 11755112, at *1; *see also Delis*, 2015 WL 12733439, at *2 ("[C]ontempt proceedings are an appropriate avenue to obtain compliance.").

Respondent has ignored his obligation to respond to the subpoena. The Court should thus not only order full and immediate production of all requested materials, but it should also find Respondent in contempt.

### III. RESPONDENT'S FAILURE TO RESPOND HARMS STONINGTON.

Written fact discovery in the Underlying Action is set to close in less than five weeks. *See* Minute Order, Underlying Action (Dec. 8, 2021). By flouting Stonington's subpoena, Respondent has deprived Stonington of reasonable and necessary discovery material and prejudiced its ability to defend itself in the Underlying Action. Indeed the subpoena seeks important information that bears on Stonington's defenses.

*First*, the subpoena seeks information about Respondent's relationship with Broidy and his associates, Respondent's work in relation to the alleged hacking, and the topics on which Broidy himself stated Respondent had knowledge.[9] Indeed, Broidy specifically named Respondent has a person with knowledge of: (A) "the nature of [Broidy's] computer systems"; (B) "the **security measures** protecting [Broidy's] computer systems"; (C) "the **materials stored** on [Broidy's] computer systems"; (D) "**plans to hack** [Broidy's] computer systems"; (E) "the **identity of those who planned and participated in the hacking** of [Broidy's] computer systems"; (F) "**efforts to acquire the usernames and passwords** of those with access to [Broidy's] computer systems"; (G) "**payments made to individuals and entities to hack** [Broidy's] computer systems"; (H) "the **infiltration** of [Broidy's] computer systems"; and (I) "the **materials stolen** from [Broidy's] computer systems." Ex. 2. Broidy also identified Respondent as someone with specific knowledge of the alleged damages caused by the hacking and the dissemination of materials allegedly stolen from Broidy. *Id.* Respondent is therefore a percipient

---

[9] Ex. 3, Cheng Subpoena, Reqs. 1–8, 11, 16–17, 19, 22–25, 27–41.

witness. There should be no question that Stonington's defense is prejudiced due to Respondent's failure to respond.

*Second*, the subpoena seeks information regarding allegations stated in the FAC, including those about the alleged hacking and the alleged basis for targeting Broidy.[10] In addition to alleging specifics regarding the alleged hacking, Ex. 1, FAC ¶¶ 78–110, the FAC contains wide-ranging allegations relating to Broidy's theory that Defendants conspired to hack and leak his emails in order to punish him for his supposedly altruistic opposition to Qatar, *see, e.g.*, *id.* ¶¶ 8, 12, 27 (alleging Defendants "manufactur[ed] negative news stories" about Broidy, describing Broidy as a "civic leader and philanthropist," and claiming the coverage of his leaked emails harmed Broidy's "standing and business relationships in Washington, D.C."). By asserting these allegations in the FAC, Broidy has necessarily put them at issue for purposes of discovery and Stonington may investigate these topics through third-party discovery. *See Pietrangelo v. Refresh Club, Inc.*, No. 18-CV-1943, 2021 WL 1209300, at *9 & n.3 (D.D.C. Mar. 31, 2021) (explaining that even "one word" in a complaint can "open a can of discovery worms," and that a "seasoned litigator such as Plaintiff ought to know better than to include such superfluous language in a complaint if he is not prepared to litigate it"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 3:07-CV-05944, 2015 WL 12952688, at *3 (N.D. Cal. Jan. 16, 2015) (holding discovery that can "rebut allegations" is discoverable even if allegations are not central to plaintiff's claims). As noted above, Respondent was hired by Broidy to provide managed IT and technology consulting work in relation to the alleged hacking. In performing this work, Respondent no doubt gained access to information about Broidy's campaign to influence U.S. policy against Qatar at the behest of Broidy's foreign principals, including the UAE and Saudi Arabia, and to improve his own business

---

[10] Ex. 3, Cheng Subpoena, Reqs. 1–15, 18–41.

opportunities with those countries. Respondent's materials, therefore, may show Broidy's role in orchestrating attacks on Qatar, efforts to influence U.S. policy regarding Qatar and Broidy's true motives for doing so, as well as information about the alleged hacking.

*Third*, the subpoena seeks information about the illegal activity that is evidenced in the supposedly hacked materials underlying Broidy's claims.[11] Indeed, Stonington has reason to believe that Respondent's materials may shed light on Broidy's illegal efforts to influence U.S. policy regarding Qatar on behalf of foreign principals.

The FAC alleges that Defendants shared Broidy's leaked emails with journalists who published supposedly false and misleading articles about them, thus injuring Broidy's public standing and revealing his alleged trade secrets. *See, e.g.*, Ex. 1, FAC ¶¶ 117, 119, 122–23, 126, 130, 141–42, 144, 148, 151–52, 158. Those articles,[12] however, reveal that Broidy engaged in covert efforts to influence high-

---

[11] Ex. 3, Cheng Subpoena, Reqs. 1–15, 17–19, 21, 26, 29.

[12] *See, e.g.*, Justin Glawe, *Elliot Broidy's Company Got Its Biggest U.S. Government Job Ever While He Pitched Trump Administration*, Daily Beast (May 24, 2018), https://www.thedailybeast.com/elliott-broidys-company-got-its-biggest-us-government-job-everwhile-he-pitched-trump-administration; Bradley Hope et al., *Trump Ally Was in Talks to Earn Millions in Effort to End 1MDB Probe in U.S.*, Wall St. J. (Mar. 1, 2018), https://www.wsj.com/articles/trump-ally-was-in-talks-to-earn-millions-in-effort-to-end-1mdbprobe-in-u-s-1519919321; Suzanne Kianpour, *Emails show UAE-linked effort against Tillerson*, BBC (Mar. 5, 2018), https://www.bbc.com/news/world-us-canada-43281519; David D. Kirkpatrick & Mark Mazzetti, *How 2 Gulf Monarchies Sought to Influence the White House*, N.Y. Times (Mar. 21, 2018), https://www.nytimes.com/2018/03/21/us/politics/george-nader-elliott-broidy-uae-saudi-arabia-white-house-influence.html; Desmond Butler et al., *Mueller probe witness secretly backed UAE agenda in Congress*, AP News (Mar. 26, 2018), https://apnews.com/article/north-america-donald-trump-ap-top-news-qatar-politics-b4946f7bf1fe4328b0c81506434aa082; Ryan Grim & Alex Emmons, *Trump Fundraiser Offered Russian Gas Company Plan to Get Sanctions Lifted for $26 Million*, The Intercept (Apr. 20, 2018), https://theintercept.com/2018/04/20/elliott-broidy-trump-russia-sanctions/; Butler & LoBianco, *The princes, the president and the fortune seekers*; Adam Pasick, *A timeline of all the foreign payments to Donald Trump's moneymen, Elliott Broidy and Michael Cohen*, Quartz (May 25, 2018), https://qz.com/1287027/a-timeline-of-donald-trump-associates-elliott-broidy-and-michaelcohens-payments-from-foreign-countries/; Andy Kroll, *How Trump's Swamp Works Now*, Rolling Stone

ranking U.S. government officials—including the President of the United States, Secretary of State, Attorney General, and members of Congress—on behalf of foreign principals (UAE, Saudi Arabia, and others).  Broidy never disclosed any of this activity or registered as a foreign agent, as required under the Foreign Agents Registration Act of 1938, 22 U.S.C. § 611 *et seq.* ("FARA"), and eventually pleaded guilty to conspiring to violate FARA (though he was subsequently pardoned by President Trump).[13]  As described by the Department of Justice, Broidy was "secretly do[ing] the bidding of foreign principals" in "a covert campaign to influence the U.S. Government."[14]  Further, as Broidy's plea agreement revealed, Broidy sought "to obtain business from a Middle Eastern country"—understood to be the UAE—"to influence U.S. policy towards a second Middle Eastern country and its alleged support of terrorist activities"—understood to be Qatar.[15]

As Defendants explained in their recent motion to compel Broidy to comply with discovery requests, information relating to Broidy's illegal conduct is highly relevant.  Among other things, this information is relevant to refute Broidy's claim that publication of his allegedly hacked emails "create[d] a false and injurious image" of him and thereby caused him harm.  Ex. 1, FAC ¶ 33.  Further, the information is relevant to rebut Broidy's repeated allegation that he was targeted because of his altruistic opposition to Qatar, when in fact he was covertly working on behalf of foreign powers to influence U.S. policy and to improve his own

---

(Feb. 12, 2019), https://www.rollingstone.com/politics/politics-features/elliott-broidy-donald-trump-swamp-793159/; Dan Friedman, *Qatari Lobbyists Received Millions Through Shadow Firm*, Mother Jones (Jan. 8, 2019), https://www.motherjones.com/politics/2019/01/qatari-lobbyists-received-millions-through-shadow-firm/.

[13] Hr'g Tr. 80, *United States v. Broidy*, No. 1:20-CR-210, ECF No. 13 (D.D.C. Oct. 23, 2020).

[14] U.S. Dep't of Justice, *Recent FARA Cases* (Dec. 3, 2021), https://www.justice.gov/nsd-fara/recent-cases.

[15] Plea Agreement 3, *United States v. Broidy*, No. 1:20-CR-210, ECF No. 8 (D.D.C. Oct. 20, 2020).

business opportunities with those foreign powers. *See also* Defs.' Mot Compel, Underlying Action, ECF No. 115 (Feb. 7, 2022).

Respondent's failure to respond prevents Stonington from fully exploring these important areas of discovery. Despite ample time to comply with Stonington's subpoena, Respondent has chosen simply to ignore it. The Court should grant this motion.

## CONCLUSION

Stonington respectfully requests that the Court compel Delon Cheng to respond in full to the discovery requests identified above and listed in Exhibit 3, to hold Delon Cheng in contempt and/or order him to show cause as to why he should not be held in contempt for his failure to obey Stonington's subpoena, *see* Fed. R. Civ. P. 45(g), and to grant such other relief as appropriate.

Dated: April 1, 2022

Respectfully Submitted,

/s/ Duane C. Pozza
Duane C. Pozza (Cal. Bar No. 225933)
dpozza@wiley.law
Stephen J. Obermeier (*pro hac vice* forthcoming)
sobermeier@wiley.law
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
Phone: (202) 719-7000
Facsimile: (202) 719-7049

*Counsel for Movants Stonington Strategies LLC and Nicolas D. Muzin*

Movants' Motion to Compel Subpoena Responses and Memorandum in Support
- 13 -